PRICE, Judge,
dissenting.
I must respectfully dissent from the result reached by the majority opinion.
There is no ambiguity in the language of LSA-R.S. 17:1171 which affords sabbatical leaves to “members of the teaching staff of public schools.” The plain meaning of the term includes only those persons actively engaged in the instructional process.
This court has not been called upon to interpret the meaning of an ambiguous term or statute. To the contrary, our duty should be limited to a review of whether the School Board in the exercise of its inherent power has been arbitrary or unreasonable in rejecting plaintiff’s application for leave for rest and recuperation because he is not a member of the teaching staff. The majority recognizes that the Board carried out its duty in good faith following legal advice from its counsel and in accord with a series of Attorney General opinions directing such a course be followed by the Board.
The usurpation by this court of the Board’s prerogative is in direct conflict with the basis of the opinion in another sabbatical leave decision rendered by this court on this same date. See Shaw v. Caddo Parish School Board, 347 So.2d 39 (La.App. 2nd Cir. 1977). In Shaw this court quotes with approval expressions of the Supreme Court in State, ex rel Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1943) in part as follows:
There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, ... or the conduct of a public school system. A presumption of legality and regularity attaches to the section of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering.
******
It is indisputable that the jurisprudence of this State is settled beyond doubt that where a statute creates a Board and grants to it certain administrative and executive functions and responsibilities, the courts will not interfere with the bona fide judgment of the Board based upon substantial evidence. It is only where the complainant shows there has been an invasion of his rights by the Board exceeding its powers or doing him an injustice that the courts have set aside the actions of the Board. * * * (Emphasis supplied in Shaw)
I am in accord with the view of the district judge that the legislature by using the term “members of the teaching staff” left the ultimate determination of those to be included within this category to the discretion of the parish or municipal school boards provided it is exercised in good faith. This is not an unconstitutional delegation of legislative power to the School Board.
The majority opinion places undue emphasis on the comprehensive description of the qualifications and duties of the administrative employees of the School Board formulated in connection with a professional survey of the Caddo School system in recent years. Having teacher certification as a “preferred attainment level” for Director of Personnel in the formulated job description does not of itself render the Director of Personnel a member of the teaching staff.
The general duties of plaintiff as Director of Personnel are described in the testimony of Dr. Earl McKenzie, the Superintendent of Caddo Parish schools as “. . . primarily responsible for directing the activities of the personnel department whose job is to recruit and seek employment and to disburse or advise our people of their benefits and rights under their employment privileges.”
*39 Dr. McKenzie further testified concerning the real necessity for having a teacher’s certificate as a qualification for this position:
Q. So holding that certificate is not essential for the job?
A. Not essential, no.
Q. Would you have any reluctance if the job were open and an applicant came from someone who is qualified from industry_business in the field of personnel to recommend to the school board the hiring of that person, the adjustment of the job description to delete the holding of a certificate and the hiring of that person?
A. No, I have no_I might have at one time, but I have no_I think I would be looking for a personnel person, who can do personnel work.
Q. Personnel work as distinguished from instructional work?
A. Yes.
The Director of Personnel is no more a part of the instructional process than the Director of Transportation. These are purely administrative positions which are in support of the teaching process.
The evidence shows that although for a number of years prior to 1975, the School Board blindly followed the recommendations of the administrative staff in granting sabbatical leaves without properly evaluating each case in relation to whether the applicant was eligible under the language of the statute, the practice was stopped after the Board became aware of the Attorney General opinions defining the statute and the Board’s duties and authority.
It is only coincidental that plaintiff made his application at a time the Board began to follow its duty' under the law, and he was thus denied a benefit that had been extended to his predecessor under more lax procedures.
There is no evidence that the Board misrepresented to plaintiff he would continue to be entitled to sabbatical leave eligibility after he left the status of teaching and became a part of the administrative staff of the Board. Plaintiff has not testified that such a representation was made or that such a factor entered into his motivation for accepting the promotion.
The result reached by the majority is contrary to the intent and purpose behind the sabbatical leave law.