173 So.2d 46 (1965)
Warren H. CULLY et al.
v.
CITY OF NEW ORLEANS.
No. 1719.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1965.
Rehearing Denied April 5, 1965.
Stone, Pigman & Benjamin, Saul Stone, and Campbell C. Hutchinson, III, New Orleans, for plaintiffs-appellees.
Alvin J. Liska and King F. Nungesser, Jr., New Orleans, for defendant-appellant.
Before REGAN, SAMUEL and HALL, JJ.
HALL, Judge.
This suit was brought by fifteen citizens and taxpayers of the City of New Orleans and two students of the Delgado Trades and Technical Institute to enjoin the City of New Orleans from further diverting the 57 acre tract forming the campus of the Delgado Trades and Technical *47 Institute (hereinafter referred to as "Delgado Trades School") to uses and purposes not directly related to the purpose for which it was dedicated i. e. the establishment of the Delgado Trades School, and from building, constructing or placing on the tract any building or other structure not directly related to the activities and functions of the Delgado Trades School. Petitioners further prayed that the City be ordered to remove or turn over to the Delgado Trades School for its exclusive use all buildings and other structures presently on the tract which are being used by agencies or parties other than the Delgado Trades School.
The City of New Orleans filed exceptions of no right and no cause of action and an answer. By stipulation of the parties the hearing on the rule for a preliminary injunction was converted into a trial on the merits. The trial resulted in a judgment overruling the exceptions of no right or cause of action and granting an injunction in favor of petitioners substantially as prayed for. The City appealed.
The City has reurged its exceptions of no right and no cause of action in this Court and they will receive our first consideration. For this purpose it is necessary to review briefly the background of the action as revealed by the record.
None of the facts are in dispute. Isaac Delgado, a New Orleans business man and philanthropist, died in 1912. In a codicil to his last will and testament Mr. Delgado made the following bequest:
"* * * The residue of my estate I give and bequeath unto the City of New Orleans for the establishment of a Central Trades School in which boys of the grammar grades of the Public Schools can be taught a trade in this school to be called the Isaac Delgado Central Trades School.
"I desire the fund donated by me to be used entirely in the establishment of the above-mentioned school and its permanent equipment, and I expect the City of New Orleans to provide for the teaching force and the annual maintenance of the said school * * *."
The residue of his estate consisted primarily of a sugar plantation located in St. Mary Parish known as Albania Plantation.
The Council of the City of New Orleans formally accepted the bequest "under its full terms and conditions" by City Ordinance No. 8547 N.C.S. adopted April 3, 1912. By Act No. 26 of the Regular Session of the State Legislature of 1918 the City of New Orleans was authorized to purchase for the sum of $141,500.00 and to dedicate in perpetuity a tract of land "to constitute a site for the location of the Delgado Central Trades School * * *." The $141,500.00 consisting of funds solely obtained from a portion of the legacy of Mr. Delgado to the City, was used to purcase a 57.3 acre tract of land near City Park in the City of New Orleans. In 1920 construction was begun on the main building of the Delgado Central Trades School, and the school now consists of several buildings and is operating to capacity.
The conduct, operation and management of the school is vested by ordinance in a Board of Managers, subject to the approval of the Commission Council (Code of The City of New Orleans § 57-13) but under the Charter of the City of New Orleans the Department of Property Management has the custody and maintenance of all property owned or operated by the City for public purposes including the Delgado Trades School property. During recent years the Department of Property Management has allocated land on the Delgado campus to various City agencies and other parties for purposes unrelated to the function of the Delgado Trades School. In excess of 16 acres of the tract has been allocated to the following:
1) New Orleans Police Department
2) New Orleans Recreation Department
*48 3) New Orleans Fire Department
4) The Holt Cemetery
5) WYES-TV
and various buildings and other immovable structures have been placed on the property by these occupants.
This suit arose out of the fact that the City has now proposed to construct on the 57 acre tract a permanent building and parking lot for the New Orleans Recreation Department (NORD) to be known as the "Delgado Community Center." This proposed community center is to be used for purposes entirely unrelated to the purposes, functions and activities of the Delgado Trades School.
It is pertinent to note that the City of New Orleans does not contribute one cent from its public fisc in support of the Trades School. Other than by revenues from private endowments and revenues from the Delgado Albania Plantation which is the principal remainder of the residue of Mr. Delgado's estate, the operation of the school is entirely financed by school funds furnished by either the State or the Federal Government, and by a proportion of the State tax on racing.
Petitioners contend that the Trades School needs the entire tract for expansion and that fifteen of them as citizens and taxpayers have a real and actual interest in seeing that this important educational institution is not damaged by the City's violation of the terms of the Delgado bequest, and that two of them as students of the school have a right as beneficiaries of the bequest to see that the City fulfills its duty to the school.
The City of New Orleans contends that plaintiffs have not shown they have been or will be damaged or injured because of the construction of a public facility on the Delgado tract.
Although we are not inclined to disagree with the Trial Court's holding that the Construction by NORD of the proposed "Delgado Community Center" is a violation of the terms of the Delgado bequest, the primary question is whether plaintiffs have any "real and actual interest" in bringing this suit. (See LSA-C.C.P. 681).
Plaintiffs as mere citizens have no right of action to bring this proceeding because it is not shown that they have any interest different from that of the public generally. See State ex rel Schoeffner v. Dowling, 158 La. 706, 104 So. 624, wherein the Court said:
"* * * But we think the great weight of authority is decidedly to the effect that, without some peculiar, special, and individual interest, a citizen though he be a taxpayer, has no standing in court to champion a cause or subject-matter which pertains to the whole people in common, nor has an individual citizen a legal standing in court to enforce the performance of a duty which a public officer owes to the public at large, unless it clearly appears that such individual citizen has a special and peculiar interest in the performance of such duty apart from the interest which he has as one of the general public in having the duty performed."
American Jurisprudence expresses the rule as follows:
"Public wrongs or neglect or breach of public duty cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally, even, it seems, though his loss be greater in degree, unless such right of action is given by statute. * * *." 39 Am.Jur. "Parties" § 11, p. 863.
LSA-R.S. 33:4711 has no application to this case.
Plaintiffs' right of action as taxpayers is thus expressed in Donaldson v.
*49 Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34:
"* * * The true doctrine of the cases in which taxpayers have been complainants is that they have the right to resort to judicial authority to restrain their public servants from transcending their lawful powers, or violating their legal duties in any unauthorized mode which will increase the burden of taxation or otherwise injuriously affect the taxpayers or their property." (Emphasis supplied)
This restriction on the right of taxpayers to sue is found in countless cases decided by our Courts. Among them, see: Handy v. City of New Orleans, 39 La.Ann. 107, 1 So. 593; Conery v. New Orleans Waterworks Co., 39 La.Ann. 770, 2 So. 555; State ex rel. Orr v. City of New Orleans, 50 La.Ann. 880, 24 So. 666; City-Item Co-operative Printing Co. v. City of New Orleans, 51 La.Ann. 713, 25 So. 313; Redersheimer v. Flower, 52 La.Ann. 2089, 28 So. 299; Johnson v. City of New Orleans, 105 La. 149, 29 So. 355; Hudson v. Police Jury of Claiborne Parish, 107 La. 387, 31 So. 868; Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L.R.A. 723; Murphy v. Police Jury, St. Mary Parish, 118 La. 401, 42 So. 979; Morris v. Municipal Gas Co., 121 La. 1016, 46 So. 1001; Saxon v. City of New Orleans, 124 La. 717, 50 So. 663; Bienvenu v. Police Jury of St. Martin Parish, 126 La. 1103, 53 So. 362; Dunham v. Town of Slidell, 133 La. 212, 62 So. 635; Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183; Graham v. Jones, 198 La. 507, 3 So.2d 761; Ricks v. Close, 201 La. 242, 9 So.2d 534; Suarez v. Police Jury of Parish of St. Bernard, 203 La. 680, 14 So.2d 601. See also 64 C.J.S. Municipal Corporations § 2143, at p. 958.
However, the fact that the taxpayer's interest might be small and not susceptible of accurate determination is not sufficient to deprive him of his right of action (See Suarez v. Police Jury of the Parish of St. Bernard, supra) nor in our opinion is it necessary to a right of action for him to show anything other than facts from which may be drawn the conclusion that his interests as a taxpayer or property owner are or may be adversely affected.
We have searched the record in vain in an effort to ascertain wherein the proposed erection of the "Delgado Community Center" on the Delgado tract will increase the burden of taxation or otherwise affect plaintiffs as taxpayers or as property owners. Taxpayers have contributed nothing to the purchase of the tract, and there is no misappropriation of tax funds involved. While it is true the fund for the erection of the community center was obtained from a bond issue secured by taxation it would seem that the erection of the center on a site already owned by the City would be beneficial rather than burdensome to the taxpayers. The most that can be said is that the City may possibly by its actions give the heirs of Isaac Delgado a legal right to revoke the donation, or may possibly discourage future benefactors from donating property or funds to the City for educational or eleemosynary purposes. The happening of either of these contingencies might result in additional tax exposure for the taxpayers of the City, but in our opinion they are entirely too problematical and remote to sustain a right of action in plaintiffs as taxpayers.
Plaintiffs cite the case of Anderson v. Thomas, 166 La. 512, 117 So. 573, as authority for the proposition that members of the general public have a right of action to enjoin a municipality from diverting public property from the use to which it had been dedicated. In that case the president of the Civic League and various taxpayers of the City of Shreveport sought to enjoin the City from erecting an auditorium on a square of ground purchased by the City with tax funds and dedicated as a public park. The Court found that *50 the erection of an auditorium would take up the entire square and would utterly destroy its use as a public park. It also found that an auditorium is only a quasi-public place which is let for hire for musical and other entertainments for which an admission is charged, thus excluding the general public. The only reference by the Court to the right of the plaintiffs to bring the suit is as follows:
"An exception to the capacity of plaintiffs was taken during the trial. It is not urged in the briefs; it is not well founded and is overruled. See Stevens v. Walker, 15 La.Ann. 577 * * *
"As to the right of plaintiffs to maintain this action, in addition to Stevens v. Walker, supra, holding that individuals may maintain actions to keep public places open, we quote from 26 Cyc. 401, approved in State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624, as follows: * * *."
The Anderson case seems actually only to hold that individuals may maintain actions to keep public places open for public use. It is to this effect that it was cited in City of Shreveport v. Kahn, 194 La. 55, 195 So. 461.
If the Anderson case meant to hold that a citizen without any interest different from that of the public generally or a taxpayer whose burden of taxation is unaffected may maintain an action in cases such as the one before us now, it is contrary to the case of State ex rel. Schoeffner v. Dowling cited by it and contrary to the holding of many more recent cases heretofore cited by us.
As to the two plaintiffs who are enrolled as students in the Delgado Trades School we fail to see where they have suffered or may suffer any damage or injury whatever by the erection of a community center on the tract. Their education would be entirely unaffected thereby.
For the foregoing reasons we are of the opinion that the exception of no right of action filed by the City should be maintained.
The judgment appealed from is therefore reversed and judgment is now rendered in favor of the City of New Orleans and against the plaintiffs, Warren H. Cully, Dr. David J. Heiman, Collins C. Diboll, Jr., Stanton Chassaignac, Julius Zuberbier, A. P. Stoddard, Norwood Jatho, Jr., Edward Boettner, Jr., Thomas E. Schaedel, Robert J. Page, Melville L. Menendez, Edmond L. LaBauve, Wilfred L. LeDieu, Phillip H. Landwehr, Joseph Archer, Frank Prattini and Henry P. Deubler, Jr., maintaining the City's exception of no right of action and dismissing said plaintiffs' suit; costs of both courts to be borne by plaintiffs.
Reversed and rendered.